Charles William JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 68565.

Court of Criminal Appeals of Texas, En Banc.

Oct. 26, 1983.

James R. Moriarty, Houston, for appellant.

Jim Mapel, Dist. Atty., and Michael Leburkien, Asst. Dist. Atty., Angleton, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for possession of methamphetamine. Trial was before the court on a plea of not guilty. Punishment was assessed at two years probated.

In his first two grounds of error, appellant challenges the admission into evidence of the methamphetamine and two hypodermic syringes, all of which were recovered in a search of his truck. Appellant contends that the search of his truck was illegal under the Fourth Amendment to the United States Constitution and Art. I, Sec. 9 of the Texas Constitution in that the officer making the search lacked probable cause.

Detective Michael Merkel of the Alvin Police Department was patrolling Gordon Street, the main thoroughfare in Alvin, at approximately 5:00 a.m. on December 10, 1979. He observed a 1976 Dodge pickup truck parked at a McDonald's Restaurant. The truck was backed up to the McDonald's. The bed of the pickup was loaded with furniture. Appellant was seated in the driver's seat. The area was well lighted.

Merkel thought the situation was suspicious since the McDonald's was closed and the hour was so early. He approached appellant's truck and ordered him out of the vehicle. He asked for appellant's driver's license and appellant complied with the request. Appellant's driver's license was in order.

Merkel copied down appellant's license plate number and radioed the dispatcher, in order to see if the truck was stolen. After closely examining the furniture in the back of the pickup, Merkel determined that it was not the type of furniture found in McDonald's restaurants. He thus satisfied himself that appellant was not in the process of stealing furniture from McDonald's.

Merkel asked appellant what he was doing. Appellant explained that he was hauling furniture for a friend and that the truck belonged to that friend.[1] Another truck was also hauling furniture, but that truck was having mechanical trouble somewhere along the route. Appellant had pulled into the McDonald's to await the arrival of the other truck.

During the time Merkel was talking to the appellant, he was constantly shining his flashlight in and about the truck. He testified that he was trying to "search with his eyes," to see as much as he could inside the truck in order to confirm or deny his suspicion that criminal activity was afoot.[2]

At some point in time after hearing appellant's story, Merkel feared for his safety, though he was never able to articulate why he harbored such a fear. He glanced quickly into the truck cab's interior and found no evidence of any weapons.

Merkel next shined his flashlight across the floorboard of the cab interior. He discovered an ignition switch and a screwdriver on the floor. On the steering column he saw "fresh marks" indicating that the ignition switch had recently been removed. Appellant explained that he was a mechanic and had been working on the car.

Merkel thought his discovery of the ignition switch and the screwdriver gave him probable cause to believe the truck was stolen and to search the truck. He leaned down into the truck in order to retrieve the ignition switch and the screwdriver.

As Merkel rose up from the area of the floorboard he noticed a plastic package with two objects sticking out of the end. The package was sticking out of the visor on the driver's side. It is undisputed that the visor was up and that Merkel had not seen the package when he was outside the truck looking in. Upon closer examination Merkel discovered that the two objects, which stuck out approximately four inches from the visor, were hypodermic syringes. The syringes were wrapped in some kind of opaque paper bag.

Merkel grabbed the bag and looked inside discovering a white powder that was later determined to be methamphetamine. Ap-

---

1. At trial appellant testified that he had purchased the truck on the previous afternoon but did not yet have title. It is not clear from the record whether this information was conveyed to Merkel.

2. Merkel testified that as soon as he saw the truck parked at McDonald's at 5:00 a.m. loaded with furniture he thought appellant had already committed a crime.

pellant was arrested. After the arrest, Merkel received word that the truck was not stolen.

 It is well settled that a police officer may briefly stop a suspicious individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information. An occupant of an automobile is just as subject to a brief detention as is a pedestrian. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Circumstances short of probable cause for an arrest may justify temporary detention for the purpose of investigation since an investigation is considered to be a lesser intrusion upon the personal security of the individual. *Leighton v. State,* 544 S.W.2d 394 (Tex.Cr.App. 1976).

 In order to justify the intrusion, the law enforcement officer must have specific articulable facts which, in light of his experience and personal knowledge, together with other inferences from those facts, would reasonably warrant the intrusion on the freedom of the citizen detained for further investigation. Detention based on a hunch is illegal. *Williams v. State,* 621 S.W.2d 609 (Tex.Cr.App.1981). There must be a reasonable suspicion by the officer that some activity out of the ordinary is occurring or had occurred, some suggestion to connect the detained person with the unusual activity, and some indication that the activity is related to a crime. Where the events are as consistent with innocent activity as with criminal activity, a detention based on those events is unlawful. *Shaffer v. State,* 562 S.W.2d 853 (Tex.Cr.App.1978).

 Unquestionably, appellant was detained for purposes of the Fourth Amendment when Merkel ordered him out of the vehicle and demanded to see his driver's license. There was never any suggestion by the State that appellant gave his consent to any of Merkel's activities.

In *Ebarb v. State,* 598 S.W.2d 842, 850 (Tex.Cr.App.1980), we noted that, "when a person is sitting in a parked car and a police officer orders him to roll down the window or to open the door, there is at that point a temporary seizure for investigative detention—a 'stop.' "

In *Amorella v. State,* 554 S.W.2d 700 (Tex.Cr.App.1977), we upheld an investigative detention and enumerated several factors that justified the stop. The defendant's auto was stopped with the motor running in the parking lot of a closed Woolco store at 1:30 a.m. All other businesses in the area were closed. The store was located in a high-crime area. Even though the parking lot was huge, the car was parked immediately adjacent to the store. Two men were inside the car and a third man stood in back of the vehicle next to the open trunk. All of the men watched the officer as he drove by. As the policeman passed the car, the third man closed the trunk, got in the car and drove away.

In *Tunnell v. State,* 554 S.W.2d 697 (Tex. Cr.App.1977) we held there was an insufficient basis for an investigatory detention. In that case, an officer saw appellant and two other men parked in a well-lighted hospital parking lot at 2:16 a.m. The car's lights were off. The officer knew that a Kraft plant operating twenty-four hours a day was located a mile away. The officer turned around and approached the lot and saw that the car's lights had been turned on. The officer followed the car and stopped it.

The facts of the instant case bear more resemblance to *Tunnell* than to *Amorella.*

 Appellant's truck was parked in front of the McDonald's and was visible from the main thoroughfare. Neither appellant nor the truck he was driving were partially hidden or situated near a rear door of the restaurant. Appellant was not engaged in any furtive or suspicious activity in or about the truck and was not trying to break into the restaurant. He did not attempt to flee as Merkel approached him.

There was no evidence that this was a high crime area and there was no evidence of any "no trespassing" signs in the Mc-Donald's parking lot. Appellant had committed no offense in Merkel's presence.

There was nothing unusual about the truck itself, other than perhaps the furniture located in the bed.

The only factors imaginably out of the ordinary were the early morning hours, the presence of furniture, and the parking of the vehicle next to a closed place of business. But these events were as consistent with innocent activity as they were with criminal activity.

Merkel obviously had the right to investigate the situation further, but not to detain the appellant while doing so absent other evidence of suspicious activity.

There were insufficient articulable facts shown which would have justified the initial detention of appellant. As this detention was improper, the syringes and methamphetamine recovered as a result of the ensuing search were inadmissible. *Baldwin v. State,* 606 S.W.2d 872 (Tex.Cr.App.1980).

There is no support in the record for the notion that the syringes would have been discovered in plain view irrespective of appellant's detention. The syringes were not discovered until Merkel was inside the truck cab performing a search.

In another ground of error, appellant challenges the sufficiency of the evidence.

■ The State must prove two elements in order to establish the unlawful possession of a controlled substance: (1) that the accused exercised care, control, and management over the contraband; and (2) that the accused knew the matter possessed was contraband. *Nunn v. State,* 640 S.W.2d 304 (Tex.Cr.App.1982).

■ Although it is not necessary to prove that the accused had exclusive possession of the controlled substance in question, if the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Hughes v. State,* 612 S.W.2d 581 (Tex.Cr. App.1981).

■ The affirmative link can be established by showing additional facts and circumstances which indicate the accused's knowledge and control of the contraband. *Deshong v. State,* 625 S.W.2d 327 (Tex.Cr. App.1981). Among such additional facts which can establish the affirmative link are: the marihuana was in plain or open view, *Hughes v. State,* supra; the narcotic was conveniently accessible to the accused, *Hahn v. State,* 502 S.W.2d 724 (Tex.Cr.App. 1973); the accused was the driver of the automobile in which the contraband was found, *Aldridge v. State,* 482 S.W.2d 171 (Tex.Cr.App.1972); and the contraband was found on the same side of the car seat as the accused was sitting, *Orosco v. State,* 164 Tex.Cr.R. 257, 298 S.W.2d 134 (1957).

In the instant case, the evidence is undisputed that appellant purchased the truck the day before he was arrested and had exclusive possession of the vehicle for twenty-four hours prior to his arrest. Also, the accused was the driver and sole occupant of the vehicle in which the methamphetamine was found, the drug was found on the same side of the car seat as the appellant was sitting, and the narcotic was conveniently accessible to the accused. To a person sitting inside the truck cab, the hypodermic syringes were partially visible as was part of the wrapping for the methamphetamine.

■ Appellant stresses that the amount of methamphetamine found did not constitute a usable quantity. There is no provision in the Controlled Substances Act mandating that one must possess a usable amount of methamphetamine. *Cantu v. State,* 546 S.W.2d 621 (Tex.Cr.App.1977).

■ The State's chemist testified that approximately three milligrams of methamphetamine were recovered from appellant's truck. This was more than a trace and showed that the drug was quantitatively measurable. *Kent v. State,* 562 S.W.2d 855 (Tex.Cr.App.1978). Further, the methamphetamine could be seen without the aid of a microscope. The evidence is sufficient to support the appellant's conviction.

In light of our finding that the contraband and hypodermic syringes were seized as the result of an unlawful search, the judgment is reversed and the cause is remanded.

ONION, P.J., concurs in results.

CLINTON, Judge, concurring.

While the Court correctly sustains appellant's first two grounds of error upon its finding that the controlled substance and hypodermic syringes were seized in an unlawful search, some of the authorities cited and discussed to support its findings were decided at a time when conventional wisdom attributed more to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (and other "stop and frisk" cases purporting to follow them) than was actually held in either. As was later explained in *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), for there to be even a valid patdown under *Terry v. Ohio*, supra, the one making it must have a reasonable belief that the citizen is armed and presently dangerous. The *Terry* rationale was not extended to the interior of a motor vehicle until just a few months ago in *Michigan v. Long*, —— U.S. ——, 103 S.Ct. 3469, 77 L.Ed.2d 1201, 33 CrL 3317 (1983).

Meanwhile the Supreme Court undertook to provide "clear guidance dispositive of the myriad factual situations" in which a citizen is stopped by a peace officer. *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981). We drew on that opinion in *Hull v. State*, 613 S.W.2d 735 (Tex.Cr.App.1981), to find that conduct of officers in detaining Hull "was without a particularized and objective suspicion of criminal activity on his part" and perforce "violative of the Fourth Amendment," *id.*, at 740. It is upon that current exposition of the law of seizure and search that I agree with the ultimate conclusion reached by the Court.

Accordingly, I concur in the judgment of the Court.