Opinion issued January 29, 2009 














In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00153-CR






CRYSTAL LEE WINN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 185th District Court

Harris County, Texas

Trial Court Cause No. 1082379






MEMORANDUM OPINION

A jury convicted appellant, Crystal Lee Winn, of delivery of a
controlled substance and assessed punishment at 30 years' confinement and
a $20,000 fine. In two related points of error, appellant contends the
evidence is both legally and factually insufficient to support her conviction.
We affirm.

BACKGROUND

 On April 26, 2006, Houston police served a search warrant for
appellant's apartment in Kingwood, Texas after finding a false drug
prescription and traces of marihuana and cocaine in abandoned trash. The
apartment was located across the street from Kingwood High School. While
conducting preraid surveillance that afternoon, officers saw appellant's
common-law husband, Ernest Naquin, remove a brown box from his
automobile and place it behind some bushes located near a bedroom
window. Soon after, Antonio Hunter arrived at the apartment in a white
Dodge Durango. Naquin gave the box to Hunter, who provided Naquin with
a small package containing money. 

Two officers saw Naquin immediately hand the money to appellant
through the open bedroom window. Hunter also confirmed that appellant
was present during the transaction. Soon after, Hunter's vehicle was
stopped, and police found that the box he obtained from Naquin was filled
with prescription medication. The box contained 6,120 dihydrocodeinone
pills, 600 Xanax pills, and 1,080 Soma tablets. 

Hunter admitted that he and Naquin were involved in a scheme
whereby appellant created false driver's licenses on a computer. Hunter and
Naquin would bring such identification to a pain management clinic, where
another associate would fax prescriptions to a colleague at the South
Wayside Pharmacy. Then, the two men would travel to the pharmacy and
sign other people's names for the medication.

Hunter was good friends with Naquin for several years and was also
familiar with appellant. Hunter had known Naquin since junior high school,
and the two lived together when Hunter was released from prison in 2004.
Hunter admitted meeting appellant around 1994 and also knew her sister. He
had previously lived in this apartment with Naquin and appellant, and
though he resided elsewhere at the time of the incident, Hunter would visit
the apartment a few times each week.

Hunter testified that appellant would regularly count the money he
provided to Naquin, in order to see if Hunter had sufficiently paid for the
drugs. Hunter further testified that appellant wanted this drug transaction to
take place outside the window because she wanted to hide the operation
from her sister, who was the only other person inside the apartment at the
time.

Shortly after Hunter was stopped, police executed a search warrant for
appellant's apartment. Inside, they discovered file folders marked by date
containing hundreds of falsely-created identification cards. Some of these
documents matched the drugs and receipts found in the box Naquin gave to
Hunter. One folder was lying open, exposing a fraudulently created driver's
license. Police also found several yearbooks in the apartment with student
photographs cut from it. In addition, $33,222 in cash was seized from the
residence. After questioning, appellant's sister was released. 

Appellant and Naquin claimed that they started their own medication
center, Westpark Clinic, and appellant was responsible for the
establishment's finances and banking. Naquin maintained that appellant
oversaw much of the clinic's operations. However, appellant denied using a
computer, and presented evidence suggesting a lack of technical skill.
Appellant also denied knowledge of the folders inside of her apartment, as
well as the illegal drugs her husband possessed. She also asserted that she
was not in the bedroom or near the window when Naquin and Hunter
completed their transaction.

Naquin, who admitted to consuming 80-90 hydrocodone pills per day,
claimed full responsibility for the drug operation. He testified that he hid
such illegal documents from appellant inside their apartment, and that
appellant knew nothing about such activities. 


SUFFICIENCY OF THE EVIDENCE

 Appellant claims the evidence is both legally and factually insufficient
to support her conviction. To withstand appellant's challenge in this Court,
the State had to establish that appellant solicited, encouraged, directed,
aided, or attempted to aid in the delivery of the substance, and also that
appellant did so with the intent to promote or assist in the delivery. Tex.
Penal Code Ann. §7.02 (a)(2) (Vernon 2008); Tex. Health & Safety
Code Ann. §481.114(e) (Vernon 2008).

Legal Sufficiency

 In her first point of error, appellant contends that the evidence is
legally insufficient to support her conviction for delivery of a controlled
substance. When evaluating the legal sufficiency of the evidence, we view
the evidence in the light most favorable to the verdict and determine whether
any rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319,
99 S. Ct. 2781, 2789 (1979); Drichas v. State, 175 S.W.3d 795, 798 (Tex.
Crim. App. 2005).  The standard is the same for both direct and
circumstantial evidence cases.  King v. State, 895 S.W.2d 701, 703 (Tex.
Crim. App. 1995).  

We do not resolve any conflict of fact, weigh any evidence, or
evaluate the credibility of any witnesses, as this is the function of the trier of
fact.  See Adelman v. State, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992);
Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991).  Instead, our
duty is to determine whether both the explicit and implicit findings of the
trier of fact are rational by viewing all the evidence admitted at trial in the
light most favorable to the verdict.  See Adelman, 828 S.W.2d at 422. In
conducting our review, we resolve any inconsistencies in the evidence in
favor of the verdict.  Matson, 819 S.W.2d at 843.

In reviewing the sufficiency of the evidence, we should look at
"events occurring before, during and after the commission of the offense and
may rely on actions of the defendant which show an understanding and
common design to do the prohibited act." Hooper v. State, 214 S.W.3d 9, 13
(Tex. Crim. App. 2007); Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim.
App. 1985). Each fact need not point directly and independently to the guilt
of the appellant, as long as the conclusion is warranted by the combined and
cumulative force of all the incriminating circumstances. Hooper, 214
S.W.3d at 9; Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).
Circumstantial evidence is as probative as direct evidence in establishing the
guilt of an actor, and circumstantial evidence alone can be sufficient to
establish guilt. Hooper, 214 S.W.3d at 13.

When a defendant is not in exclusive possession of the place where
the controlled substance is found, the State must prove additional
independent facts and circumstances that affirmatively link the defendant to
the contraband in such a way that it can be concluded that the defendant had
knowledge of the contraband and exercised control over it. Nhem v. State
129 S.W.3d 696, 699 (Tex. App--Houston [1st Dist.] 2004, no pet.). An
affirmative link generates a reasonable inference that the defendant knew of
the contraband's existence and exercised control over it. Johnson v. State,
658 S.W.2d 623, 627 (Tex. Crim. App. 1983); Nhem, 129 S.W.3d at 699.
Courts have identified a non-exhaustive list of factors that may help to show
an affirmative link to controlled substances. Nhem, 129 S.W.3d at 699. 
Such factors may include presence when the search was executed,
contraband in plain view, proximity to and accessibility of the contraband,
and appellant's right to possession of the place where contraband was found.
 Id. at 699 n.1 (quoting State v. Derrow, 981 S.W.2d 776, 779
(Tex.App.--Houston [1st Dist.] 1998, pet. ref'd)). It is not the number of
affirmative links present that is important, but rather the "logical force" that
they create to prove that the defendant committed the crime. Id. at 699-70.

 The jury could have reasonably found that appellant was present
during the drug transaction. Two Houston Police officers saw appellant in
the apartment bedroom window during the transaction. The officers also
report seeing appellant accept a bundle from Naquin through the window
after Hunter provided Naquin with the package. Hunter, who knew both
Naquin and appellant, also testified that appellant was present during the
transfer.

 Further, a reasonable jury could have reasonably found that appellant
was also involved in other aspects of such drug sales. Hunter saw appellant
making false identification cards on the apartment computer. He also
testified that appellant counted the money from prior drug sales, and when
Hunter did not provide enough funds, Naquin would inform him that
appellant counted the money and noticed a deficiency.

 The vast amount of other material recovered in appellant's apartment
also supports appellant's participation. A rational jury could have
determined that the yearbooks, file folders, false driver's licenses,
prescription forms, medication, and traces of other narcotics indicate
appellant's involvement in illegal drug activity.

For these reasons, we hold that the evidence is legally sufficient to
support a rational jury's finding that appellant was intentionally involved in
the delivery of a controlled substance. Accordingly, we reject her legal
sufficiency challenge and overrule appellant's first point of error.

Factual Sufficiency

In her second point of error, appellant contends that the evidence is
factually insufficient to support her conviction. When conducting a factual-sufficiency review, we view all of the evidence in a neutral light.  Cain v.
State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997).  We will set the verdict
aside only if (1) the evidence is so weak that the verdict is clearly wrong and
manifestly unjust, or (2) the verdict is against the great weight and
preponderance of the evidence.  Johnson v. State, 23 S.W.3d 1, 11 (Tex.
Crim. App. 2000).  Under the first prong of Johnson, we cannot say that a
conviction is "clearly wrong" or "manifestly unjust" simply because, on the
quantum of evidence admitted, we would have voted to acquit had we been
on the jury.  Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). 
Under the second prong of Johnson, we cannot declare that a conflict in the
evidence justifies a new trial simply because we disagree with the jury's
resolution of that conflict.  Id.  Before finding that the evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must
be able to say, with some objective basis in the record, that the great weight
and preponderance of the evidence contradicts the jury's verdict.  Id.  In
conducting a factual-sufficiency review, we must also consider the evidence
that, according to the appellant, most undermines the jury's verdict.  Sims v.
State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).  The fact-finder alone
determines what weight to place on conflicting testimony because that
determination depends on the fact-finder's evaluation of witnesses'
credibility and demeanor. Cain, 958 S.W.2d at 408-09.  As the sole
determiner of the credibility of the witnesses, the fact-finder may choose to
believe all, some, or none of the testimony presented.  Id. at 407 n.5.

As discussed above, the State presented two Houston Police officers
who saw appellant receive a package through her bedroom window during
the drug transaction. Further, the State produced testimony from longtime
friend Antonio Hunter, who knew Naquin and appellant, and who testified
that both were present and involved in the transaction. Hunter also testified
about appellant's involvement in similar drug operations, noting that she
would alert Naquin if Hunter failed to provide enough money. In addition,
the State presented voluminous evidence of false identifications that had
been created and stored in appellant's apartment. Some of these file folders
and identification cards were located in plain view of officers and could
likely be seen by anyone living in the apartment, including appellant.

Appellant contends that she did not possess technical skills that would
suggest computer knowledge. However, Hunter testified that appellant used
the apartment computer to produce false identification cards. Further,
appellant claims bias from the fact that Hunter testified for the State in
exchange for leniency in his own trial for narcotics possession. Appellant
suggests that Naquin should be believed when he admitted to committing the
crime alone. However, the jury was free to accept or reject this theory when
appellate advanced it at trial. As the fact-finder, the jury was in the best
position to determine witness credibility. As such, we cannot say that the
jurors were incorrect in their findings, or that the great weight and
preponderance of the evidence contradicts their verdict. We reject
appellant's factual sufficiency claim and overrule her second point of error.


CONCLUSION

 We affirm the trial court's judgment.



 Sherry Radack

 Chief Justice



Panel consists of Chief Justice Radack and Justices Higley and Nuchia. (1)


Do not publish. Tex. R. App. P. 47.2(b).
1.