Affirmed
and Memorandum Opinion filed February 2, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00697-CR

___________________

 

RODERICK EARL ST. JULIAN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee



 



 

On Appeal from the 182nd District Court

Harris County, Texas



Trial Court Cause No. 1144226

 



 

 

MEMORANDUM OPINION

After
the trial court denied his motion to suppress, appellant, Roderick Earl St. Julian,
pleaded guilty to state-jail felony possession of a controlled substance and pleaded
true to two prior state-jail felony convictions.  In three issues, appellant
argues the trial court erred by denying his motion to suppress and that he was
denied due process because of prosecutorial vindictiveness.  Because the
dispositive issues are clearly settled in law, we issue this memorandum opinion
and affirm.  Tex. R. App. P. 47.4.

 

 

I.   Background

Officers
Christopher L. Slater and Robert Teweleit of the Houston Police Department (“HPD”)
testified at the motion to suppress hearing.  According to their testimony, on
the evening of December 3, 2007, they were conducting a “zero tolerance” patrol
for car burglaries near the 12800 block of the East Freeway in Houston.[1]
 The officers were specifically looking for activity they believed may
signal the beginning of a motor-vehicle burglary.[2] 
Around 7:00 P.M., they were observing activity at a gas station.  A convenience
store and gas pumps were located in the front of the gas-station property, and
a large parking lot and commercial-truck repair shop were located in the rear. 
An eighteen wheeler was parked in the rear along the fence line.  At the time
of the officers’ observation, the repair shop was closed and there was no
activity occurring.  The officers described lighting in the back area as “dim”
and “kind of dusky.”  

While
observing the gas station, the officers saw a dark-colored vehicle in the
parking lot traveling in reverse without activated headlights.  The vehicle
then “pulled . . . very swiftly around the side of an [eighteen wheeler.]”  Such
vehicle operation, coupled with the repair shop being closed and the eighteen
wheeler unoccupied, caught the officers’ attention as “the kind of activity [they]
were looking for.”  

After
watching for several “moments,” the officers pulled behind the vehicle and
activated their emergency lights and spotlight.  Officer Slater
testified appellant opened the driver door to his vehicle and exited, at which
point Officer Slater exited his patrol car, drew his firearm, and commanded appellant
to stop.  Officer Teweleit, however, testified the officers exited their patrol
car before appellant exited his vehicle.  Nonetheless, neither officer ordered appellant
to exit his vehicle.  Officer Slater noticed items that he believed were a
crack pipe and cocaine drop from appellant when he exited his vehicle.  Appellant
was arrested and another police unit arrived.  While Officer Slater testified
it is illegal to operate a vehicle without headlights, neither officer knew of
any traffic code provision making it illegal for a person to drive a vehicle in
reverse in a parking lot at night without using headlights.

            Appellant’s account of the events surrounding his
arrest differed greatly.  According to appellant, he was parked in the front
part of the gas station when his friend Stephen Belle, a gas station employee,
asked if he could sit in appellant’s car during a work break.  After Belle
entered appellant’s vehicle, appellant drove in reverse ten or fifteen feet and
parked next to the eighteen wheeler.  Appellant was sitting in his car eating
and did not notice the officers until they approached his door.  Appellant
testified he was blocked by the police: one police car was parked on the side
of his vehicle, the other was directly behind him, and the eighteen wheeler was
in front of him.  The police cars did not have their emergency lights
activated.  Four officers approached appellant’s vehicle in an aggressive
manner.  Appellant believed he had no choice but to exit his vehicle after Officer
Slater instructed him to do so.

Appellant
filed a motion to suppress all evidence seized as result of his detention.  Following
a hearing, the trial court denied appellant’s motion and entered findings of
fact and conclusions of law.  Pursuant to a plea agreement, appellant pleaded
guilty to state-jail-felony possession of a controlled substance and true to
two prior state-jail-felony convictions.  The trial court assessed punishment
at five years’ confinement.  

II.   Analysis

A.        Motion to Suppress

In
his first issue, appellant contends the trial court erred in finding he was not
detained by Officers Slater and Teweleit when they pulled behind his vehicle. 
In his second issue, appellant contends his detention was illegal because the
officers did not have reasonable suspicion.

We review the trial court’s ruling on a motion to suppress under an abuse-of-discretion standard. 
Shepherd v. State, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008).  We view the evidence adduced at a suppression hearing in the light most
favorable to the trial court’s ruling.  Id.  We give almost total
deference to a trial court’s express or implied determination of historical facts
and review de novo the court’s application of the law of search and seizure to
those facts.  Id.

            A
warrantless traffic stop must be justified by reasonable suspicion.  State
v. Nelson, 228 S.W.3d 899, 902 (Tex. App.—Austin 2007, no pet.).  In
other words, the officer making the stop must possess specific, articulable
facts that, taken together with rational inferences from those facts, lead him
to conclude the person detained is, has been, or soon will be engaged in
criminal activity.  Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997);
Nelson, 228 S.W.3d at 902.  This objective standard disregards any
subjective intent of the officer making the stop and looks solely to whether an
objective basis for the stops exists.  Ford v. State, 158 S.W.3d 488,
492 (Tex. Crim. App. 2005).  A reasonable-suspicion determination is made by
considering the totality of the circumstances.  Id. at 492–93.  An
officer’s suspicion of an alleged traffic violation cannot be based on a
mistaken understanding of traffic laws.  Goudeau v. State, 209 S.W.3d
713, 716 (Tex. App.—Houston [14th Dist.] 2006, no pet.).  The burden to
demonstrate reasonable suspicion is on the State.  See Nelson, 228
S.W.3d at 902.  We review questions of reasonable suspicion de novo.  Guzman
v. State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997).

            In arguing his detention was unlawful, appellant
relies on three cases.  In Comer v. State and Johnson v. State,
the Court of Criminal Appeals held that officers lacked a sufficient basis to
detain individuals sitting in parked vehicles at night because the facts relied
upon by the officers were “as consistent with innocent activity as they [were]
with criminal activity.”  Comer v. State, 754 S.W.2d 656, 657–58 (Tex.
Crim. App. 1986), overruled by Woods, 956 S.W.2d at 38; Johnson v.
State, 658 S.W.2d 623, 625–27 (Tex. Crim. App. 1983), overruled by Woods,
956 S.W.2d at 38.  These cases are not useful in our analysis because the “as consistent
with innocent activity as with criminal activity” standard has been expressly
replaced by the “totality of the circumstances” standard.  See Woods,
956 S.W.2d at 38.  Appellant also relies on Tunnell v. State, in
which the Court of Criminal Appeals held a sufficient basis for detention did
not exist where the principal fact relied upon by the detaining officers was
that individuals were in a parked vehicle in a well-lit parking lot early in
the morning.  554 S.W.2d 697, 698–99 (Tex. Crim. App. 1977).

Here,
the officers observed more than the behavior of individuals sitting in a parked
car after nightfall.  They believed appellant was acting suspiciously because,
while on “zero tolerance” patrol for motor vehicle burglaries, they observed him
drive in reverse without activated headlights into the rear parking lot by a
closed repair shop and pull next to an unoccupied eighteen wheeler.  While appellant
focuses on the officers’ inability to cite a traffic regulation he violated, these
specific, articulable facts support a reasonable suspicion that appellant was
engaging in some activity out of the ordinary that could be related to a crime—specifically,
burglary of a motor vehicle.  Accordingly, an objective basis supported the
officers’ reasonable suspicion to temporarily detain appellant.

The
trial court denied appellant’s motion to suppress because it found appellant
was not detained at the time he dropped the cocaine and crack pipe.  However, we
sustain the lower court’s ruling if it is reasonably
supported by the record and is correct on any theory of law
applicable to the case.  State v. Dixon, 206 S.W.3d 587, 590 (Tex.
Crim. App. 2006).  Here, the trial court’s denial of appellant’s motion to
suppress can be upheld on the theory that appellant was detained before he
dropped the cocaine and crack pipe, but the officers had reasonable suspicion
for detaining him.  This theory is supported by the undisputed evidence of the
officers’ observations, and the trial court expressly found the officers to be
credible.  

We
sustain the trial court’s denial of appellant’s motion to suppress because the cocaine
and crack pipe possessed by appellant were seized pursuant to a legal detention. 
Thus, we need not consider appellant’s first issue in which he contends the
trial court erred in finding no detention occurred.  We overrule appellant’s
first and second issues.  

B.        Prosecutorial
Vindictiveness 

            In his third issue, appellant contends he was
denied due process because of prosecutorial vindictiveness.  Both appellant’s
and Stephen Belle’s cases were assigned to the same trial court and
prosecutor.  According to appellant, Belle was granted a sentence reduction
pursuant to section 12.44(a) of the Texas Penal Code.  Appellant avers that the
same prosecutor told him sentence reductions were not offered by the trial
court.  Appellant apparently contends the prosecutor vindictively misinformed
him because appellant had been acquitted in a prior case in which the
prosecutor participated.    

According to the certificate of appealability, appellant has authority
to appeal only “matters . . . raised by written motion filed and ruled on
before trial . . . .”  See also Tex. R. App. P. 25.2(a)(2)(A). 
Appellant expressed in a supplement to his motion to suppress that the
prosecutor told him a sentence reduction under section 12.44(a) was not
available, despite the fact that Belle received a reduction.  Nevertheless, appellant
did not make any argument relative to prosecutorial vindictiveness or due
process in his motion, and the trial court never ruled on any such issues. 
Accordingly, we lack jurisdiction to consider appellant’s third issue.  See
Crocker v. State, 260 S.W.3d 589, 592 (Tex.
App.—Tyler 2008, no pet.).

            We affirm the judgment of the trial court.

 

                                                                                    

                                                                        /s/        Charles
W. Seymore

                                                                                    Justice

 

Panel
consists of Chief Justice Hedges and Justices Seymore and Sullivan.

Do Not Publish —
Tex. R. App. P. 47.2(b).









[1] At the time of the suppression hearing, Officers
Slater and Teweleit had been employed by HPD for fifteen years and twenty-two
years respectively.  





[2] Officer Slater described a “zero tolerance” patrol as
“checking . . . businesses, strip centers, [and] offices . . . looking for
people who are suspicious or any kind of suspicious activities[;] looking for
people committing burglary of motor vehicles.”