**Michael Andrew BROWN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–90–00575–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

March 5, 1992.

Janet Seymour Morrow, Houston, for appellant.

Carol M. Cameron, Houston, for appellee.

Before PAUL PRESSLER, JUNELL and ELLIS, JJ.

## OPINION

JUNELL, Justice.

This appeal focuses on whether the arrest of the appellant was legal. The jury found appellant guilty of possession of co- caine weighing less than 28 grams. The jury also found that appellant had two prior felony convictions and sentenced him to thirty years confinement.

The appellant was stopped on April 25, 1989 at about 1:30 p.m. after Harris County Deputy Constable Billy Washington spotted him in the area of a recent armed robbery. Deputy Washington saw appellant leaving a Sonic Express restaurant. The appellant was suspected of robbing Bambolino's, a pizza restaurant in the area. Another deputy constable, Deputy Whatley, relayed a description of the robber to Deputy Washington. Whatley described the robber as a black man wearing a white cap, a blue shirt with a tank top, and blue pants. This description was given to Whatley by Mark Padilla, the manager of Bambolino's. Padilla had seen the robber at the time the robbery occurred. Appellant was stopped by Deputy Washington, who spotted the appellant about two blocks from Bambolino's leaving the Sonic Express fast food restaurant.

Deputy Washington called for assistance and Deputy Justin Melody responded. The two constables stopped the appellant near the apartment complex where he lived. Deputy Melody pulled up behind the appellant and Deputy Washington pulled in front of the appellant, blocking appellant in. Deputy Melody unsnapped his gun holster, but did not remove the gun. They ordered appellant to stop and asked for some identification. Appellant produced his driver's license. Then Deputy Melody ordered the appellant to put his hands on the car, and the Deputy frisked him for weapons. The officers found no weapons but noticed that appellant was carrying a white sack which said Sonic Express on the front. Deputy Washington looked inside the bag while they were waiting for Deputy Whatley to arrive with Padilla, the eyewitness. Washington found only food in the bag. The entire time the officers were waiting for Officer Whatley to arrive with Mark Padilla to make the identification of the appellant, Deputy Melody kept his hand on him. Appellant kept his hands

on the car and his head down during the whole encounter.

Deputy Whatley drove Padilla past the appellant two times at a distance of about thirty feet. Padilla explained to Whatley that the appellant did not have the same color shirt as the robber and was not wearing a cap. Whatley told Padilla that the appellant could have changed his shirt and that the white sack appellant was carrying was a Bambolino's sack. Since the robber had left Bambolino's with the money in a white sack, this statement by Whatley convinced Padilla to identify the appellant. The other two deputies did not know the significance of the white sack or the conversation Deputy Whatley had with Padilla prior to the identification. Padilla said that if that was his sack then the appellant must be the robber. Once the appellant was identified, the other two deputies placed him under arrest and began a search incident to arrest. It was during this search that Deputy Melody found the cocaine in the appellant's pocket. Deputy Washington drove the appellant back to Bambolino's for the other eyewitnesses to identify him. All of the other witnesses said that the appellant was not the robber, and Padilla also changed his mind. Appellant was arrested for possession of the cocaine found during the search incident to the arrest for robbery.

Appellant's first point of error is that the trial court erred in denying the motion to suppress the cocaine found during the search incident to arrest. We sustain this point of error and reverse the conviction on this ground for the following reasons.

■ The legality of this warrantless arrest rests on a determination of whether the officers had probable cause to arrest the appellant at the time the arrest occurred. But before a probable cause determination can be made, the point at which the appellant was legally under arrest must be decided. We find that the arrest of the appellant occurred at the time of the initial stop by the officers.

■ The time at which an investigative detention becomes an arrest has recently been discussed by the Court of Crim-inal Appeals in *Amores v. State*, 816 S.W.2d 407 (Tex.Crim.App.1991). An investigative detention is required to be based on reasonable, articulable suspicion that the person detained is connected with criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). An arrest is required to be based on the higher standard of probable cause. The officer is required to have probable cause to believe that a particular person has committed or is committing an offense. *Terry*, 392 U.S. at 11, n. 5, 88 S.Ct. at 1874, n. 5. An arrest occurs when a person's liberty of movement is restricted or restrained. *Hoag v. State*, 728 S.W.2d 375, 379 (Tex.Crim.App. 1987). *Brewster v. State*, 606 S.W.2d 325 (Tex.Crim.App.1980). *Harding v. State*, 500 S.W.2d 870 (Tex.Crim.App.1973). Article 15.22 Tex.Code Crim.Proc.Ann. provides that "a person is arrested when he has been actually placed under restraint."

In this case the officers came at the appellant from both sides to keep him from getting away. Deputy Whatley unsnapped the hammer strap on his gun, and pushed the appellant onto the hood of his police car. The appellant was told to spread his legs with his hands on the hood of the car. Deputy Melody frisked the appellant for weapons, and left his hand on the appellant throughout the entire encounter. They held the appellant in that position while they waited for Deputy Whatley to bring the eyewitness to the scene. Deputies Whatley and Washington testified that the appellant was not free to leave. In *Amores* the appellant was pulled from his car and told to lie face down on the pavement with his hands behind him. The investigation in that case occurred based on a phone call received by the dispatcher about a possible crime in progress. The court of criminal appeals held that this detention was in fact an arrest when the appellant was so constrained.

■ Whether or not the defendant is under arrest is to be determined based on all of the facts and circumstances surrounding the detention. *Hoag*, 728 S.W.2d at 378. The deputies involved in the initial stop testified at trial that the appellant was not

free to leave during the encounter. Under the law, all of the facts and circumstances in this case support the proposition that the detention was more than investigative. Based on the similarities between this case and *Amores* we hold that the appellant was under arrest at the time the officers held him on the car with his hand on the appellant.

Now that the exact time at which the defendant was arrested has been determined, then the next step is to determine if the state has met the burden of proof in a warrantless arrest case. We hold that the arrest was not supported by probable cause and that the seized evidence should have been suppressed as fruit of an illegal arrest.

In *Milton v. State*, 549 S.W.2d 190, 192 (Tex.Crim.App.1977), the court explained that state law governs in determination of probable cause and legality of arrest so long as the state law does not violate the federal constitutional protections. Probable cause determinations in a warrantless arrest setting are made primarily based on Chapter 14 of the Code of Criminal Procedure. The totality of the circumstances test is applied to determine if probable cause existed for a warrantless arrest. *Eisenhauer v. State*, 754 S.W.2d 159 (Tex.Crim.App.1988). *United States v. Mendoza*, 722 F.2d 96 at 100 (5th Cir.1983). The state has the burden to show the existence of probable cause to justify a warrantless arrest or search. *Brown v. State*, 481 S.W.2d 106, 109 (Tex.Crim.App.1972); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Probable cause has been defined to exist when the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a particular person has committed or is committing an offense. *Woodward v. State*, 668 S.W.2d 337 (Tex.Crim.App.1982) (opinion on rehearing), *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1308, 93 L.Ed. 1879 (1948). The only provision of the Code of Criminal Procedure which might be applicable to this situation is Article 14.-03(a)(1) which states that the officer may arrest without a warrant "persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony."

In this case the state has not shown that probable cause existed for the arrest under this code provision. In *Rance v. State*, 815 S.W.2d 633 (Tex.Crim.App.1991), the court of criminal appeals discussed the amount of information necessary for an officer to arrest a suspect based on a general description. In this case, like in *Rance*, the deputies arrested the appellant based on a general description from one officer to another. The description given by Deputy Whatley to Deputy Washington, who initially spotted the appellant, was very general, stating "... that he was a black male with a white cap, a blue shirt with tank top and blue pants." This description is not specific as to age, height or build. There was another description broadcast over the radio, but this was not the description Washington relied on in making his stop. They were told that the robber was armed. The appellant was not armed, and was not wearing a blue shirt or a white cap. A general description whether radio dispatched or not has been held not to be enough by itself to demonstrate probable cause. *Rance v. State*. At the time the arrest occurred this was all of the information the officers had. Deputy Melody patted down the suspect and found no weapon. The appellant was also carrying a white sack which said Sonic Express on the front. The officers looked inside this sack and found only food. The appellant was not in possession of any substantial amount of cash. All of these factors taken together indicate that appellant did not fit the description of the robber. These factors are not sufficient to warrant a prudent man to believe that the appellant had committed or was committing an offense. The state has failed to meet its burden of presenting sufficient evidence to show probable cause for the warrantless arrest, and we hold the arrest of appellant was not a lawful arrest.

Based on this finding, the evidence seized pursuant to the illegal arrest should have been suppressed. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); TEX.CODE CRIM.PROC.ANN. art. 38.23. We find that the trial court erred in denying the appellant's motion to suppress the cocaine. On the basis of our decision to reverse the judgment of the trial court on appellant's first point of error, we do not consider appellant's other two points. We reverse the judgment of the trial court and remand for further proceedings in accordance with this opinion.