**Wayne JEFFERSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–90–139–CR.**

Court of Appeals of Texas,
Austin.

May 6, 1992.

Thad Son, Austin, for appellant.

Ronald Earle, Dist. Atty., William G. Reid, Asst. Dist. Atty., Austin, for appellee.

Before POWERS, JONES and KIDD, JJ.

POWERS, Justice.

Over a plea of not guilty, the jury found Wayne Jefferson guilty of aggravated robbery. *See* Tex.Penal Code Ann. § 29.03(a) (Supp.1992). The jury assessed punishment at thirty-years imprisonment. Jefferson appeals from a judgment that convicts and sentences him accordingly. We will affirm the judgment.

## THE CONTROVERSY

In the early morning hours of December 28, 1989, three men wearing nylon stockings over their faces forced their way into a Taco Bell restaurant in Austin. Using a knife as a weapon, they robbed the employees of more than $1000 and escaped in the store manager's white Isuzu pickup truck.

When police arrived, the employees described the three robbers: (1) one was approximately six feet tall and wore a black warmup suit, possibly with red markings on the shoulder; (2) the second was between six feet and six feet-two inches tall and wore a gray jacket; (3) the third robber wore white clothing. The employees also told the police that all three robbers were black. The employees could not describe the robbers' facial characteristics because of the nylon stockings.

Austin police officer Ralph Tijerina began searching for the robbers. Within a few minutes, he saw the stolen Isuzu pickup parked in an east Austin apartment complex. While waiting in his police car for other officers to arrive, Tijerina saw three black men run toward the pickup from the middle of the apartment complex. One of the men, who was wearing a white jacket, turned away from the truck and ran around the corner of a building. The two other men continued toward the pickup until they saw the police car. They crouched behind the pickup as if to hide from the police officer and watched the officer

through the pickup windshield. The suspects' clothing matched the clothing described by the Taco Bell employees.

After a time, the two men stood erect. Tijerina said one of them "put his hands in his pockets," and both men "kind of kept looking around nervously." They began walking away, increasing their pace as they got farther from the police car. After Tijerina lost sight of the two men, the man wearing the white jacket reappeared and ran in the direction the other men had gone.

When police officer David Erskine arrived, he told Tijerina he had seen the three men standing in front of a nearby building. While Erskine approached the building from the front, Tijerina went to the rear of the building. One of the suspects, later determined to be Paul Wallace, jogged around to the rear of the building. Meeting Wallace, Tijerina identified himself as a police officer and ordered Wallace to stop. Wallace refused at first to stop, but then complied while protesting innocence of any wrongdoing.

Tijerina frisked Wallace for weapons and felt something "hard and kind of elongated" in his front pants pocket. Fearing the object was a knife, Tijerina pulled it from Wallace's pocket. In fact, the object was a key ring containing numerous keys. Erskine ran to the rear of the building to assist Tijerina, followed by two other officers and the remaining two suspects, one of whom was the appellant, Jefferson, and the other a man named Michael Brown.

The officers frisked Jefferson and Brown for weapons. In that frisk, Erskine found a large bulge in Jefferson's front pants pocket. He removed the object and found it was a "wad of money," consisting of five- and ten-dollar bills totaling $135. At some point during the search Officer Tijerina found a nylon stocking behind the building near where Wallace was standing. The officers also noted Jefferson was wearing a set of athletic shoes with soles matching a footprint left at the robbery scene. Based on these facts, the officers took the three suspects "into custody" on suspicion of armed robbery. Although Tijerina testified

the suspects were not under arrest, Erskine indicated in his testimony that the officers handcuffed the suspects before moving them.

The officers next took all three suspects back to the parking lot. There Tijerina found that a key on the key ring taken from Wallace would unlock the door and turn the ignition on the stolen pickup. Tijerina testified that the officers then arrested all three suspects for auto theft and searched them. In Jefferson's rear pants pocket the officers found a nylon stocking.

The Taco Bell employees arrived in the apartment-complex parking lot. They told the police the suspects' clothing matched that of the robbers. Tijerina testified that, after the victims' identification, the suspects were also under arrest for suspicion of robbery.

At trial, Jefferson filed a motion to suppress certain evidence, including the discovery of the nylon stocking and testimony about oral statements he made at the time of his arrest. The trial court granted the motion as to the oral statements but denied the motion as to the nylon stocking. After a jury trial, Jefferson was convicted of aggravated robbery. He appeals on two grounds, assigning error to the denial of his motion to suppress and to the prosecutor's argument before the jury.

## DENIAL OF MOTION TO SUPPRESS

In his first point of error, Jefferson contends the trial court erred in overruling his motion to suppress evidence because the evidence adduced at the pretrial hearing demonstrated that the arresting officers did not have probable cause to arrest him. He argues that his warrantless arrest was illegal because it was based on nothing more than the victims' description of the robbers' race and height and a general description of their clothing.

We must determine three issues pertinent to Jefferson's complaint: (1) Were the officers justified in making an investigatory stop? (2) At what point did that investigatory stop become an arrest? (3) Was there probable cause for that arrest?

### Investigatory Stop

Circumstances short of probable cause may justify temporary detention for the purpose of investigation. *Johnson v. State,* 658 S.W.2d 623, 626 (Tex.Crim.App. 1983). An investigatory stop is justified if a police officer, based upon specific and articulable facts, reasonably concludes the detained person may be associated with a crime. *Davis v. State,* 829 S.W.2d 218 (Tex.Crim.App.1992) (citing *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). For a *Terry* stop to be valid, (1) the officer must have a reasonable suspicion that some activity out of the ordinary is occurring; (2) there must be some suggestion to connect the detained person with the unusual activity; and (3) there must be some indication that the activity is related to a crime. *Johnson,* 658 S.W.2d at 626.

In *Davis* the police officer responded to a dispatch call reporting that three black men were selling narcotics in front of a particular apartment in an apartment complex. Upon arrival, the officer saw three black men in front of the named apartment. When the men noticed the officer, they tried to flee in a nearby vehicle. The officer blocked their escape and asked them to leave the car. In a weapons search of the appellant, who was wearing a long trench coat on a warm day, the officer found a matchbox. He opened the matchbox and found cocaine. *Davis,* 829 S.W.2d at 219.

The appellant in *Davis* filed a motion to suppress the discovery of the cocaine, which the trial court denied. The court of criminal appeals determined the investigatory stop was justified. Relying on the suspects' presence in a place where narcotics were reportedly being sold, the suspects' attempt to flee when the officer arrived, and the fact that the appellant was wearing a trench coat on a warm day, the court of criminal appeals held that "all the factors taken together created a reasonable suspicion of criminal activity." *Id.* at 220.[1]

We believe the combination of factors in the present case created a reasonable suspicion of criminal activity as well. Jefferson and Wallace, both matching the general description of the robbers and wearing clothing similar to that described by the robbery victims, ran to the very truck stolen in the robbery. When they saw Officer Tijerina, they tried to hide, and soon afterward they began walking in the direction opposite from the officer's car, increasing their pace the farther they got from the police car. Brown, who was also wearing clothing similar to that described by the robbery victims, later emerged from the apartment complex and ran to join Wallace and Jefferson. The three men were together when Erskine saw them. We conclude these factors justified the investigatory stop.

We must now determine whether the developments during the investigatory stop created probable cause for an arrest.

### Time of Arrest

To determine whether the officers had probable cause to arrest Jefferson, we must first determine when the arrest took place. "A person is arrested when he has been actually placed under restraint or taken into custody ... by an officer or person arresting without a warrant." Tex.Code Crim.Proc.Ann. art. 15.22 (1977). An arrest is complete when a person's liberty of movement is restricted or restrained. *Hoag v. State,* 728 S.W.2d 375, 379 (Tex. Crim.App.1987).

The officers first frisked the suspects for weapons. At some point during the frisk Tijerina spotted the nylon stocking on the ground near Wallace. After finding the keys on Wallace and the money on Jefferson, the officers led the suspects back to the stolen pickup. Tijerina testified the suspects were merely "in custody" rather than under arrest during the period between the frisking for weapons and the time when the officers started the engine of the stolen pickup. Erskine testified, however, that the suspects were not free to leave during that time. Moreover, the offi-

---

1. The court went on to hold that the officer exceeded the scope of his authority by opening the matchbox, a conclusion that is irrelevant in this cause. *Davis,* 829 S.W.2d at 220–21.

cers apparently handcuffed the suspects before moving them to the stolen pickup.

Although Tijerina testified otherwise, we believe Jefferson was under arrest before Tijerina used the key to unlock and start the engine of the stolen pickup. *See Ruth v. State*, 645 S.W.2d 432, 435 (Tex.Crim. App.1979) (the opinion of the officer as to when a person is under arrest is not dispositive). The three suspects' liberty of movement was restricted after the officers discovered the keys, the money and the stocking lying on the ground. *See Amores v. State*, 816 S.W.2d 407, 411–12 (Tex.Crim. App.1991) (holding that the suspect was under arrest after being stopped and handcuffed, even though the officer characterized the stop as an investigative detention); *Woods v. State*, 466 S.W.2d 741, 744 (Tex. Crim.App.1971) (holding that the suspect was under arrest when officers took him out of his house and told him to put his boots in tracks left by neighbor's assailant).

Because the officers arrested the suspects before they used the keys to start the engine of the stolen pickup, we must ignore that information in determining whether the officers had probable cause to arrest Jefferson. We restrict our inquiry to those facts and circumstances existing when the investigative stop became an arrest.

### Probable Cause

 In order for police officers to make a warrantless arrest[2] or search, the State must show the existence of probable cause at the time of the arrest or search and the existence of circumstances which made the procuring of a warrant impracticable. *Crane v. State*, 786 S.W.2d 338, 346 (Tex.Crim.App.1990); *see also Rance v. State*, 815 S.W.2d 633, 635 (Tex.Crim.App. 1991) (the State carries the burden of showing probable cause in a warrantless arrest). The test for probable cause in a warrantless arrest is "whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably

trustworthy information were sufficient to warrant a prudent man in believing the arrested person had committed or was committing an offense." *Rance*, 815 S.W.2d at 635 (citing *Stull v. State*, 772 S.W.2d 449, 451 (Tex.Crim.App.1989)). In applying this standard, we are to look at "the totality of the circumstances" to determine if the officers had a substantial basis for concluding that probable cause existed at the time of the questioned action. *Eisenhauer v. State*, 754 S.W.2d 159, 164 (Tex.Crim.App. 1988).

 We believe the totality of the circumstances supports the trial court's implicit finding that the officers had probable cause to arrest Jefferson. First, Officer Tijernia found the stolen pickup in the apartment-complex parking lot only minutes after leaving the robbery scene and beginning his search. Shortly after finding the stolen pickup, Tijerina saw Jefferson and Wallace running toward the pickup; when the two men saw Tijerina, they first hid behind the pickup, and a short time later began walking rapidly in the opposite direction. By running to the stolen pickup and then hiding from the officer before fleeing, the men (1) were in a suspicious place, and (2) engaged in behavior which would reasonably imply they were guilty of some felony or breach of the peace. *See* Tex.Code Crim.Proc.Ann. art. 14.03(a)(1) (Supp.1992). We do not believe these actions were consistent with innocent activity. *See Amores*, 816 S.W.2d at 814. Even if this furtive behavior could be called innocent in itself, it may still help provide the basis for a showing of probable cause. *See Stull v. State*, 772 S.W.2d 449, 451 (Tex. Crim.App.1989).

Second, the three suspects matched the robbery victims' descriptions of the robbers. Jefferson, Wallace and Brown are black. The robbery victims described the man wearing the gray jacket as between six feet and six feet-two inches tall. Jefferson, who was wearing a gray jacket at the time of his arrest, is six feet tall.

---

**2.** *See* Tex.Code Crim.Proc.Ann. arts. 14.01–.04 (1977 & Supp.1992) (setting forth circumstances

under which a warrantless arrest is justified).

Moreover, the robbery victims described the robbers as wearing black, gray and white clothing. At the time of their arrest, Jefferson was wearing a gray jacket, Brown was wearing a white jacket and Wallace was wearing a black jacket. Jefferson argues that jackets of those colors are not unusual and therefore do not contribute to a finding of probable cause. It is true that any one jacket, by itself, did not appreciably increase the likelihood that its wearer was involved in the robbery. We believe the possibility of a mere coincidence decreased considerably when all three suspects' jackets matched exactly the victims' descriptions of the robbers' clothing. Had one of the suspects been wearing, for example, a green or blue jacket, the color of the clothing would be much less significant.

Finally, during the investigatory stop the officers found a nylon stocking near Wallace's feet and the wad of cash in Jefferson's pocket. As Jefferson points out, possession of cash is not a crime, and finding a nylon stocking near Wallace's feet does not directly implicate Jefferson in the robbery. Nevertheless, these items were part of the totality of the circumstances in which the officers acted in arresting the three suspects.

We believe the facts and circumstances within the officers' knowledge at the time of the arrest were sufficient to warrant a prudent belief that Jefferson had committed a crime. We therefore hold that probable cause existed for the arrest. Because the officers had probable cause to arrest Jefferson, their subsequent search was legal. The trial court properly denied Jefferson's motion to suppress the discovery of the mask.

### IMPROPER PROSECUTORIAL ARGUMENT

In his second point of error, Jefferson contends the trial court erred by allowing the prosecutor to make improper jury arguments during the punishment stage of the trial. The prosecutor made the following remarks to the jury:

Now, when I was a little girl, my father worked at a gas station. But back then they called it a service station because when you pulled up into the service station, the attendant came out and pumped your gas; he washed your windshield; he took your money and made change. And now you go to a gas station and what happens? You walk up, and there's a man or woman in a glassed-in cubicle. And they're speaking to you through the speaker, and they have—you have to slide your money into that little drawer. And they take it in, and they slide your change out.

Now, why has it changed so much just in my lifetime? It changed because of people like Mr. Jefferson. Because of people—

At that point Jefferson's trial counsel objected to the prosecutor's argument as being outside the record. The trial court overruled the objection, and the prosecutor continued her argument:

It's because of criminals—and Mr. Jefferson is a convicted felon—that we hesitate to go to 7–11's at night. It's because of people like Mr. Jefferson that we lock ourselves in our homes. We have become the inmates. We are imprisoned by the crime all around us.

She completed her argument by emphasizing to the jury two purposes of sentencing, deterrence and punishment. On appeal, Jefferson argues that the prosecutor's remarks were outside the record and improper because they were unsupported by the evidence.

Proper jury arguments fall within four categories: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim.App.1973). In analyzing a complaint, we must determine the probable effect the argument had on the mind of jurors. *Everett v. State*, 707 S.W.2d 638, 640 (Tex.Crim. App.1986). The State contends the argument in this case was a proper plea for law enforcement. We agree.

 "A proper plea for law enforcement may take many forms, one of which is to argue the relationship between the jury's verdict and the deterrence of crime in general." *Borjan v. State,* 787 S.W.2d 53, 55 (Tex.Crim.App.1990). The State may argue the impact of the jury's verdict on the community. *Id.* In this case, the prosecutor's argument appears to be a statement about the cumulative effect of crime on society, and a plea for the jury to deter such crime by its punishment of Jefferson.

We believe the present case to be analogous to *Lopez v. State,* 628 S.W.2d 77 (Tex.Crim.App.1982). In *Lopez,* the defendant, a high-school student, was on trial for murdering the principal of his school. The prosecutor argued:

> We must have, in a contemporary society, a return to the basic principles of law and order. In this case, perhaps more than any other, demonstrates the kind of conduct that threatens the very basic structure of the community in which we reside. [sic] It threatens our schools. The next step, if persons can escape criminal conduct on this type of evidence that has been produced, it will threaten our homes. This evil, this growing evil, it must be challenged.

*Id.* at 80. The court of criminal appeals held this argument was a proper plea for law enforcement. *Id.; see also Minafee v. State,* 482 S.W.2d 273, 276 (Tex.Crim.App. 1972). In both *Lopez* and the present case, the prosecutor pointed out the deleterious effect on society of the type of crime of which the defendant was accused, and asked the jury to hold the defendant accountable for those effects. *See Cunningham v. State,* 484 S.W.2d 906, 911 (Tex. Crim.App.1972) (rejecting a claim that the prosecutor improperly injected new facts into the case by arguing crime was on the increase in the county).

Jefferson cites a number of cases in which the court of criminal appeals reversed convictions because of improper argument. *See, e.g., Thomas v. State,* 527 S.W.2d 567, 568 (Tex.Crim.App.1975); *Rodriguez v. State,* 520 S.W.2d 778, 780 (Tex. Crim.App.1975); *White v. State,* 492 S.W.2d 488, 489 (Tex.Crim.App.1973). In each of those cases, however, the prosecutor implied that the defendant was responsible for crimes other than the crime of which he stood accused.

Although the prosecutor's argument was not a typical plea for law enforcement, we do not believe the argument constituted reversible error. The argument did not imply Jefferson committed other robberies. *See Borjan,* 787 S.W.2d at 58. Moreover, the prosecutor related her argument to the goals of sentencing, punishment and deterrence. Considering the record as a whole, we cannot say the argument was extreme or manifestly improper, nor did it inject new and harmful facts into the case. *See Logan v. State,* 698 S.W.2d 680, 683 (Tex. Crim.App.1985); *see also Decker v. State,* 717 S.W.2d 903, 909 (Tex.Crim.App.1983) (approving an argument in which the prosecutor told the jury they were part of the battle in "a war on crime"); *Tijerina v. State,* 786 S.W.2d 508, 513 (Tex.App.1990, pet. ref'd) (the State is allowed to argue to the jury that they may protect the community by assessing a lengthy prison sentence). We overrule the second point of error.

Finding no error, we affirm the trial-court judgment in all respects.