IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-272-CR


AND


NO. 3-93-273-CR




MARVIN WASHINGTON, A/K/A MELVIN ELI PEDFORD, (1)



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT



NOS. 42,092 & 42,093, HONORABLE JOE CARROLL, JUDGE PRESIDING



 




 These appeals are taken from convictions for burglary of a habitation. Tex. Penal
Code Ann. § 30.02(a)(1) (West 1989). After his pretrial motions to suppress evidence were
denied, appellant waived trial by jury in each case (2) and entered pleas of guilty to the two
indictments. The trial court found appellant guilty and assessed forty-five years' imprisonment
in each case with the sentences to run concurrently. (3) The punishment was assessed in accordance
with a plea bargain and appellant retained his right to appeal the rulings on his pretrial motions
to suppress evidence. Notices of appeal were given. See Tex. R. App. P. 40(b)(1).

 Appellant advances two points of error contending that the trial court erred in
overruling appellant's original and reurged motion to suppress evidence "seized as a result of
appellant's illegal warrantless arrest made without probable cause in violation of Article 1, section
9 of the Texas Constitution."

 At the suppression hearing, the State stipulated that there was a warrantless arrest. 
The prosecutor then assumed the burden of persuasion to show that the arrest was based on
probable cause and was valid. See Russell v. State, 717 S.W.2d 7, 9-10 (Tex. Crim. App. 1986). 
Officer Daniel Jay Piechowiak of the Harker Heights Police Department was the only witness. 
At the conclusion of the hearing, the trial court took the matter under advisement. Subsequently,
appellant asked to reopen the suppression hearing and offered the "911 tape" of the conversation
between the caller and the police dispatcher and between the dispatcher and Officer Piechowiak
concerning the report of a burglary in progress at 209 Indian Oaks. The tape and a typed
transcription thereof were offered and admitted into evidence without objection. Appellant then
reurged his motion to suppress. The motion was overruled.

 At the first hearing, Officer Piechowiak testified that on August 4, 1992, about
9:20 a.m., the dispatcher advised him that there was a burglary in progress at 209 Indian Oaks. 
He was informed that the suspect was a black male wearing sunglasses and that the suspect was
attempting to gain entry into the home through the front door or a front window. Piechowiak
recalled that he was told that two young girls in the house had called the dispatcher and were still
on the line as he was enroute to the location. The officer estimated that he was about a half-mile
away on patrol when he first received the dispatch. The officer proceeded towards the location
in question. A minute or a minute and a-half later, Piechowiak turned his patrol vehicle onto
Indian Oaks in the 300 block. This was a residential area. It was deserted. It was after 9:00
a.m. and most individuals would have gone to work. There was no vehicular or pedestrian traffic
except a black man wearing sunglasses walking in the street towards the oncoming police vehicle. 
The man was in front of 206 Indian Oaks which was "across the street and two houses down from
209," the reported location of a burglary in progress. Officer Piechowiak drove past the man and
stopped. The man (later identified as appellant) began to side step and walk in circles, "not
knowing which way to go." Piechowiak explained that the circling occurred as Officer Kenneth
Hughes drove up in another police vehicle and stopped in front of appellant.

 Officer Piechowiak got out of his vehicle, pointed a gun at appellant and yelled: 
"Freeze, Police." Appellant was instructed to place his hands on the police vehicle. Appellant
dropped a backpack and complied. When asked for identification, appellant gave the name
"Marvin Washington," but stated he had no identification. The officer found a Swiss Army knife
on appellant's person. Appellant was then handcuffed. A search of the backpack revealed a
hammer and a label bearing the inscription, "Holly Henderson, 305 Indian Oaks."

 Appellant was then taken to 209 Indian Oaks where one of the young girls
identified him as the man who broke into the house. Officer Piechowiak proceeded to 305 Indian
Oaks. No one was home, but the front door was open. An investigation showed that the home
had been burglarized.

 The transcription of the "911" tape reflects remarks by the caller, the dispatcher
and the officer receiving the dispatch. The caller identified the person trying to break into the
house as a black man wearing "glasses" (sunglasses were not specified). The dispatcher,
apparently talking to both the caller and the officer, informed the officer that the suspect had
broken a window and reassured the caller that an officer was on his way. Later, the dispatcher
relayed to the officer that the caller was not sure if the suspect was still at the house. The caller
was told to stay on the line until the officer arrived.

 Appellant contends the tape undermines Piechowiak's testimony that the description
of the suspect included the fact the suspect was wearing sunglasses as the tape refers only to
"glasses." 

 In the instant case there was no consensual police-citizen contact. See California
v. Hodari, 111 S. Ct. 1547, 1551 (1991); Florida v. Bostick, 111 S. Ct. 2382, 2386 (1991); White
v. State, 846 S.W.2d 427, 430 (Tex. App.--Houston [14th Dist.] 1992, no pet.); Mitchell v. State,
831 S.W.2d 829, 832 (Tex. App.--Houston [1st Dist.] 1992, pet. ref'd). Circumstances short of
probable cause may, however, justify temporary detention for the purpose of interrogation. 
Johnson v. State, 658 S.W.2d 623, 626 (Tex. Crim. App. 1983); Jefferson v. State, 830 S.W.2d
320, 323 (Tex. App.--Austin 1992, pet. ref'd). An investigative stop is justified if a police officer,
based upon specific and articulable facts, reasonably concludes that the detained may be associated
with a crime. Davis v. State, 829 S.W.2d 218, 219 (Tex. Crim. App. 1992) (citing Terry v.
Ohio, 392 U.S. 1 (1968)). The facts in the instant case carry it beyond a Terry-type detention. 
 Here, Officer Piechowiak got out of his police vehicle, pointed a pistol at appellant and told him
to "Freeze." Appellant was caused to place his hands on the police vehicle and then he was
handcuffed. "A person is arrested when he has been actually placed under restraint or taken into
custody by an officer or person executing a warrant of arrest, or by an officer arresting without
a warrant." Tex. Code Crim. Proc. Ann. art. 15.22 (West 1977). A statutory arrest occurs
"when a person's liberty of movement is restricted or restrained." Burkes v. State, 830 S.W.2d
922, 925 (Tex. Crim. App. 1991); Amores v. State, 816 S.W.2d 407, 411 (Tex. Crim. App.
1991); Hoag v. State, 728 S.W.2d 375, 379 (Tex. Crim. App. 1987). There can be no question
that appellant was under arrest when, at gunpoint, he was caused to place his hands on the police
vehicle.

 Generally, police officers must obtain a warrant prior to taking someone into
custody. Dejarnette v. State, 732 S.W.2d 346, 349 (Tex. Crim. App. 1987). A warrantless
arrest, as in the instant case, requires the "legal equivalent of constitutional probable cause." 
Amores, 816 S.W.2d at 413 & n.9. The test for probable cause in a warrantless arrest is "whether
at that moment the facts and circumstances within the officer's knowledge and of which he had
reasonably trustworthy information were sufficient to warrant a prudent man in believing the
arrested person had committed or was committing an offense." Rance v. State, 815 S.W.2d 633,
635 (Tex. Crim. App. 1991); Stull v. State, 772 S.W.2d 449, 451 (Tex. Crim. App. 1989). The
State carries the burden of showing probable cause when there is a warrantless arrest. Rance, 815
S.W.2d at 635; Russell v. State, 717 S.W.2d 7, 10 (Tex. Crim. App. 1986). However, the State
is not required to prove the propriety of the arrest beyond a reasonable doubt. See Lalande v.
State, 676 S.W.2d 115, 117 (Tex. Crim. App. 1984). The "totality of the circumstances" test is
applied to determine if probable cause exists for a warrantless arrest. Eisenhauer v. State, 754
S.W.2d 159, 164 (Tex. Crim. App.), cert. denied, 488 U.S. 848 (1988), overruled on other
grounds, Heitman v. State, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991); Jefferson, 830 S.W.2d
at 324. In determining probable cause and the legality of an arrest, state law governs so long as
it does not violate federal constitutional protections. Milton v. State, 549 S.W.2d 190, 192 (Tex.
Crim. App. 1977).

 Probable cause determinations in a warrantless arrest setting are made primarily
based on chapter 14 of the Texas Code of Criminal Procedure. Brown v. State, 826 S.W.2d 725,
728 (Tex. App.--Houston [14th Dist.] 1992, no pet.). Article 14.04 provides one of the exceptions
to the general rule which requires that an officer obtain a warrant before effecting an arrest. Tex.
Code Crim. Proc. Ann. art. 14.04 (West 1977); (4) Crane v. State, 786 S.W.2d 338, 346 (Tex.
Crim. App. 1990).

 "Satisfactory proof" as used in the statute is the equivalent of probable cause. 
Amores, 816 S.W.2d at 413; Earley v. State, 635 S.W.2d 528, 531 (Tex. Crim. App.
1982).Under article 14.04, there are four basic requirements that must be met: (1) the person who
gives the information to the officer must be credible; (2) the offense must be a felony; (3) the
offender must be about to escape; and (4) there must be no time to procure a warrant. Crane, 786
S.W.2d at 346; Fry v. State, 639 S.W.2d 463, 469 (Tex. Crim. App. 1982), cert. denied, 460
U.S. 1039 (1983).

 Under the "credible person" requirement, a third person is not necessary. An
arrest may be based on facts viewed entirely by the arresting officer. Dejarnette, 732 S.W.2d at
350. An officer who does not himself possess probable cause may rely upon information relayed
to him by another officer, including a security guard. Tarpley v. State, 565 S.W.2d 525, 529
(Tex. Crim. App. 1978). A police broadcast over the police radio may provide sufficiently
credible information upon which to base a warrantless arrest. Esco v. State, 668 S.W.2d 358, 360
(Tex. Crim. App. 1982); Law v. State, 574 S.W.2d 82, 84 (Tex. Crim. App. 1978). Probable
cause based on police broadcasts is determined by information known to the police officer
requesting the broadcast. Crane, 786 S.W.2d at 346. Probable cause will then be based on the
strength of the information known to the person reporting the information. Although the arresting
officer need not know the details of the information given by a third party, Tarpley, 565 S.W.2d
at 529-30, the State, in order to establish probable cause. must then show what the third party
knew, or how he was credible. See Amores, 816 S.W.2d at 416 (where the State failed to call the
police dispatcher and did not establish probable cause).

 Information placed into a police broadcast that comes from a witness/victim of the
crime is considered inherently reliable. Esco, 668 S.W.2d at 360; Carter v. State, 713 S.W.2d
442, 447 (Tex. App.--Fort Worth 1986, pet. ref'd), 742 S.W.2d 398 (Tex. Crim. App. 1987); see
also Frazier v. State, 480 S.W.2d 375, 378 (Tex. Crim. App. 1972). Moreover, probable cause
may be based on a combination of information provided by others and by the officer's personal
observations. Anderson v. State, 787 S.W.2d 221, 224 (Tex. App.--Fort Worth 1990, no pet.). 
In the instant case, given the circumstances, the "credible person" requirement of article 14.04
was met.

 Article 14.04 does not require a showing that the offender was in fact about to
escape, nor does it require a showing that there was in fact no time to procure a warrant. 
Dejarnette, 732 S.W.2d at 349. The statute merely requires a showing that there is "satisfactory
proof from representations by a credible person that the felony offender is about to escape, so that
there is no time to procure a warrant." Id. (emphasis added). The police officer himself may
observe conduct which indicates that the offender is about to escape. Id. at 350; see also Crane,
786 S.W.2d at 347.

 Officer Piechowiak was informed that the suspect was a black man with glasses or
sunglasses. Piechowiak arrived on the scene within a minute or a minute and a-half after
receiving the broadcast that informed him that the suspect may have left 206 Indian Oaks. Upon
arriving, the officer found the residential area deserted except for a black man with sunglasses. 
This individual fit the general description given. (5) The man was walking in the street away from
206 Indian Oaks and was "only two houses down" on the opposite side of the street. As the
officer passed the individual he saw the individual take a side step as if to flee, then walk in
circles, "not knowing which way to go," apparently after seeing Officer Hughes pull up in front
of him. Given the proximity in time of the apprehension to the crime itself and appellant's furtive
actions, the facts were sufficient to support a belief that appellant would take flight and that
procuring a warrant was impractical. Allridge v. State, 850 S.W.2d 471, 492 (Tex. Crim. App.
1993). In determining whether an officer reasonably could have believed that a suspect would
take flight, it is important to keep in mind the "temporal proximity" of the actions of the suspect
both to the commission of the crime and to the suspect's discovery of the police investigation of
him. Id. at 491; Dejarnette, 732 S.W.2d at 352.

 As noted, the "credible person" requirement of article 14.04 was met by the
combination of the personal observations of Officer Piechowiak and the earlier information
received via the police broadcast. The felony requirement was met by a showing of a report that
a burglary was in progress, that the suspect was trying to gain entry through a front door or
window, and later that a window had been broken. Thus, there was information that a burglary
or attempted burglary had been committed or was being committed. Both offenses are felony
offenses. See Tex. Penal Code Ann. § 30.02 (West 1989) & § 15.01 (West Supp. 1994). The
other requirements were met by a showing of satisfactory proof from representations by a credible
person and the officer's observations that the felony offender was about to escape so that there was
no time to procure a warrant.

 In a suppression hearing, the trial court is the sole trier of fact and judge of the
credibility of the witnesses and the weight to be given their testimony. Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial court may accept or reject any or all of the
witnesses' testimony. Taylor v. State, 604 S.W.2d 175, 177 (Tex. Crim. App. 1980). In
reviewing the trial court's decision, an appellate court does not engage in its own factual review;
it determines only whether the record supports the trial court's fact findings. Romero, 800
S.W.2d at 543. If the fact findings are supported by the record, an appellate court is not at liberty
to disturb these findings absent an abuse of discretion. Cantu v. State, 817 S.W.2d 74, 77 (Tex.
Crim. App. 1991); Romero, 800 S.W.2d at 543; Dancy v. State, 728 S.W.2d 772, 777 (Tex.
Crim. App.), cert. denied, 484 U.S. 975 (1987). On appellate review, the court normally will
address only the question of whether the trial court improperly applied the law to the facts. 
Romero, 800 S.W.2d at 543; Vargas v. State, 852 S.W.2d 43, 44 (Tex. App.--El Paso 1993, no
pet.).

 We view the evidence in the light most favorable to the trial court's ruling on the
motion to suppress evidence. Daniels v. State, 718 S.W.2d 702, 704 (Tex. Crim. App.), cert.
denied, 479 U.S. 885 (1986); overruled on other grounds, Juarez v. State, 758 S.W.2d 772, 780
n.3 (Tex. Crim. App. 1988). In the instant case, we do not find that the trial court abused its
discretion. Appellant's warrantless arrest was valid under article 14.04 and article one, section
nine of the Texas Constitution. Both points of error are overruled.

 The judgments are affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Kidd, B. A. Smith and Onion*

Affirmed on Both Causes

Filed: April 27, 1994

Do Not Publish








* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1.   Appellant suggested to the trial court that his true name was Melvin Eli Pedford. It
does not appear that the record was corrected to clearly reflect the suggested name.
2.   The record reflects that there was an earlier jury trial on the alleged offenses which
ended in a hung jury. The pretrial motions and rulings were adopted and carried forward
with the instant bench trial.
3.   The indictments alleged four prior felony convictions for the enhancement of
punishment, including three burglary convictions and one theft conviction. It does not
appear that these prior convictions were utilized at the penalty stage of the trial in light of
the plea bargain.
4.   Article 14.04. provides:


Where it is shown by satisfactory proof to a peace officer, upon the
representation of a credible person, that a felony has been committed, and that
the offender is about to escape, so that there is no time to procure a warrant,
such peace officer may, without warrant, pursue and arrest the accused.
5.   The general description given must be considered in context with all the other facts and
circumstances. The description of the suspect given was not shown to be substantially
different from that of appellant at time of the arrest. The general description did not stand
alone in the assessment of probable cause. Cf. Rance, 815 S.W.2d at 635-36; Brown, 826
S.W.2d at 728.