IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-344-CR





JASON SESSION,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT



NO. 0930060, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING



 




 Appellant Jason Session, in a non-jury trial, entered a guilty plea and was convicted
of the offense of possessing cocaine. Controlled Substances Act, 71st Leg., R.S., ch. 678, sec.
1, § 481.115, 1989 Tex. Gen. Laws 2230, 2936-37 (Tex. Health & Safety Code Ann. § 481.115,
since amended). Punishment was assessed at confinement for five years, probated, and a fine of
seven hundred fifty dollars. Appellant preserved his right to appeal from an order denying his
pretrial motion to suppress evidence that he alleges was unlawfully obtained. We will affirm the
judgment.

 On December 1, 1992, between 2:00 and 3:00 p.m., Austin Police Officer Ronald
Lara was in uniform and driving a marked patrol car in East Austin near some housing projects. 
He testified that drug dealing was frequent in the neighborhood and that during the three years he
had worked in this area, he had arrested "numerous" people dealing in narcotics. As he drove
slowly along Chicon Street, Lara saw appellant and a woman about thirty to forty feet away
talking and making a hand-to-hand exchange of something that Lara thought was narcotics. 
Officer Lara had witnessed similar transactions at this location which had proved to be exchanges
of narcotics. When appellant and the woman saw the patrol car "they both kind of panicked,"
looked at each other, and suddenly without departing gestures walked rapidly in opposite
directions. Officer Lara thought that the pair looked "scared" when they saw him. Appellant
walked rapidly along a driveway and Lara drove near him and asked appellant to stop so they
could talk. Appellant did not look at Lara, kept walking, and pretended not to hear Lara. Lara's
impression was that appellant "was fixing to run."

 Lara then drove in front of appellant, stopped, and stepped out of the patrol car. 
Lara again asked appellant to stop, grabbed his arm, and told him to put his hands on the hood
of the patrol car. Since Lara thought he had observed a narcotics transaction, he wanted to talk
with appellant. Lara's experience in making "numerous" arrests in this area had taught him that
people who had narcotics normally carried weapons. Because of appellant's actions, Lara wanted
to frisk him. Lara testified that appellant "kind of hesitated and was acting like he was fixing to
take off on me, so I physically put him against my police unit." Lara then asked appellant what
he was exchanging with the woman. Appellant became nervous and said he did not know her
name but that she owed him two dollars. Lara frisked appellant and did not feel anything he
thought was a weapon but based on his past experience Lara thought that he felt rock cocaine in
appellant's pocket. Lara asked appellant if he had any dope. Appellant replied that he did not
and volunteered that Lara "could check." After consenting to the search, appellant immediately
reached in his pocket. Lara believed appellant was trying to get the cocaine rocks and "chunk
them on the ground so, hopefully, I wouldn't find them." When the appellant stuck his hand in
his pocket, Lara grabbed and handcuffed appellant. Lara took a kleenex from appellant's pocket
in which were wrapped three yellowish-colored rocks Lara believed were crack cocaine.

 Appellant's testimony generally refuted that of Officer Lara. Appellant's version
of the event was that he was walking slowly along the street toward his sister's residence when
Officer Lara drove near him and asked if he lived in the neighborhood. Lara did not ask him to
stop, but jumped out of the patrol car, grabbed him, asked if he was tough, if he wanted to fight,
and immediately handcuffed and searched him.

 In two points of error, appellant asserts that the trial court erred in denying his
motion to suppress evidence that he alleges was unlawfully obtained in violation of both his state
and federal constitutional rights. An investigatory stop not amounting to an arrest is authorized
if the officer making the stop is able to point to specific and articulable facts that give rise to a
reasonable suspicion of criminal activity. Terry v. Ohio, 392 U.S. 1, 21-22 (1968); Davis v.
State, 829 S.W.2d 218, 219 (Tex. Crim. App. 1992). For a Terry stop to be upheld: (1) unusual
activity must be occurring or have occurred, (2) the accused must be connected with the
suspicious activity, and (3) the suspicious activity must be connected with crime. Davis, 829
S.W.2d at 219 n.2; Johnson v. State, 658 S.W.2d 623, 626 (Tex. Crim. App. 1983). The
reasonableness of an investigatory stop may be determined by examining: (1) whether the police
were aware of specific and articulable facts giving rise to reasonable suspicion, and (2) whether
the degree of intrusion was reasonably related to the known facts. In other words the issue is
whether the police conduct--given their suspicions and the circumstances--was reasonable. Terry,
392 U.S., at 19-20; United States v. Tilmon, 19 F.3d 1221, 1224 (7th Cir. 1994).

 We first must decide whether Officer Lara was justified in stopping appellant for
investigation. Does the record show specific articulable facts that gave rise to a reasonable
suspicion that appellant was engaged in or had been engaged in criminal activity which justified
the investigatory stop? We hold that it does. Lara had worked three years in the part of Austin
where the stop was made and knew it was an area known for frequent drug sales. During the time
he had worked in the area, Lara had seen many narcotics transactions and had made "numerous"
arrests of people in that area engaged in the drug traffic. In his experience, those engaged in the
drug traffic usually carried weapons. Officer Lara saw appellant and a woman talking and making
a hand-to-hand exchange of something he believed to be narcotics. When appellant and the
woman saw Lara in the marked police car, they "both kind of panicked," looked at each other,
and suddenly, without departing gestures, walked rapidly in opposite directions. They appeared
to Lara to be "scared" when they saw him. When Lara drove along beside appellant and told him
to stop because he wanted to talk to him, appellant continued to walk away. Officer Lara
articulated facts and circumstances that would justify appellant's detention for investigation under
the state and federal constitutions.

 We must next determine whether Officer Lara, having reasonable suspicion to
justify appellant's detention, acted in a reasonable manner to stop and detain appellant. In view
of the recent decisions of several United States courts of appeals, it would appear that Lara's acts
in detaining appellant were appropriate and reasonably related to the known facts and
circumstances justifying the stop.

 The "permissible reasons for a stop and search and the permissible scope of the
intrusion [under the Terry doctrine] have expanded beyond their original contours in order to
permit reasonable police action when probable cause is arguably lacking." United States v.
Chaidez, 919 F.2d 1193, 1198 (7th Cir. 1990), cert. denied, 111 S. Ct. 2816 (1991). The last
decade "has witnessed a multifaceted expansion of Terry," including the "trend granting officers
greater latitude in using force in order to `neutralize' potentially dangerous suspects during an
investigatory detention." United States v. Perdue, 8 F.3d 1455, 1464 (10th Cir. 1993). The trend
has led to permitting the use of handcuffs, placing suspects in police cruisers, drawing weapons,
and other measures of force more traditionally associated with arrest than with investigatory
detention. Tilmon, 19 F.3d at 1224-25. A stop made on reasonable suspicion was not converted
into an arrest by a police officer ordering a suspect out of his car at gunpoint and making the
suspect kneel behind the car while it was being searched. United States v. Clark, 24 F.3d 299
(D.C. Cir. 1994).

 However, we believe that Officer Lara's actions in making the investigatory
detention of appellant exceeded the permissible limits set by the Court of Criminal Appeals'
decisions and that court's interpretation of Article 15.22 of the Code of Criminal Procedure,
which provides that a person is arrested when he has been actually placed under restraint. The
controlling cases in this State have generally held that facts similar to those in this case constitute
a warrantless arrest for which there must be probable cause. Amores v. State, 816 S.W.2d 407
(Tex. Crim. App. 1991); Hoag v. State, 728 S.W.2d 375 (Tex. Crim. App. 1987); Chambers v.
State, 866 S.W.2d 9 (Tex. Crim. App. 1993); see Brown v. State, 826 S.W.2d 725 (Tex.
App.--Houston [14th Dist.] 1992, no pet.); Bell v. State, 845 S.W.2d 654 (Tex. App.--Austin 1993,
no pet.); Jefferson v. State, 830 S.W.2d 320 (Tex. App.--Austin 1992, pet. ref'd); McGuire v.
State, 847 S.W.2d 684 (Tex. App.--Houston [1st Dist.] 1993, no pet.).

 Appellant was restricted in his movement and restrained of his liberty when Officer
Lara took hold of him and placed appellant's hands on the hood of the patrol car. Lara
"physically put [appellant] against" the patrol car and held appellant's arm from the time he
stopped him until appellant was formally arrested and handcuffed. Although Lara had reasonable
suspicion to make an investigatory stop, he did not have probable cause to arrest appellant for
possessing or dealing in narcotics.

 We must determine if the trial court's order denying appellant's motion to suppress
may be upheld for other legally sufficient reasons. A trial court's order denying a motion to
suppress evidence should not be disturbed on appeal unless the movant shows a clear abuse of
discretion. Davis, 829 S.W.2d at 220; Freeman v. State, 723 S.W.2d 727, 729 (Tex. Crim. App.
1986); State v. Carr, 774 S.W.2d 379, 380 (Tex. App.--Austin 1989, no pet.). The credibility of
the witnesses and the weight to be given their testimony is for the trial court's determination. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). An appellate court should not
disturb the trial court's ruling if it is supported by evidence. Johnson v. State, 803 S.W.2d 272,
287 (Tex. Crim. App. 1990). The trial court's ruling may be upheld on any valid theory
regardless of whether it was presented in the trial court or on appeal. Jones v. State, 833 S.W.2d
118, 125 n.15 (Tex. Crim. App. 1992); Lewis v. State, 664 S.W.2d 345, 347 (Tex. Crim. App.
1984); Johnson v. State, 864 S.W.2d 708, 713 (Tex. App.--Dallas 1993, pet. granted).

 A peace officer may arrest an offender without a warrant for any offense committed
within his presence or within his view. Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 1977). 
A person commits an offense if he intentionally flees from a person he knows is a peace officer
attempting to arrest him or detain him for the purpose of questioning or investigating possible
criminal activity. Act of May 3, 1989, 71st Leg., R.S., ch. 126, § 1, 1989 Tex. Gen. Laws 488. (1)

 We have held that Officer Lara had a reasonable suspicion that appellant was or
had been engaging in criminal activity sufficient to make an investigatory stop of appellant. Since
Lara was in uniform and driving a marked patrol car, appellant knew Lara was a peace officer. 
Although appellant does not agree, the evidence is ample that he knew Officer Lara was
attempting to stop him. We quote from the record:



Q. Were you driving along next to him as he walked?


A. That's correct.


Q. And did you ask him to stop?


A. Yes, I did.


Q. And did he stop? 


A. Initially, he didn't. He pretended like he didn't hear me and he kept walking.


Q. How close were you to him at the time you asked him to stop?


A. About three feet.


Q. How fast was he walking?


A. He was walking at a fast pace, you know, he almost -- when I asked him to
stop he was -- he didn't look at me and I could tell -- I got the impression that
he was fixing to run.


* * * * * *



Q. And do you remember what you said when you asked him to stop?


A. Specifically, no, not really, other than, you know, something like, "Hey, I
need to talk to you."


Q. Okay. Was it in that tone of voice that you just used right here?


A. Probably a little louder.


Q. Is it possible he didn't hear you?


A. He heard me.


Q. Well, I mean, it's possible that he didn't hear you?


A. I don't think it was.


Q. Well --


A. I was right alongside of him. He was like right here, right next to my patrol
car. My police car was right in front of him. I doubt very seriously if he
didn't hear me.


Q. How far away were you from him at that time?


A. Two to three feet, maybe. I mean, just right outside the window, pulled up
right next to him.


Q. It's possible that he didn't hear and understand you, isn't it?


A. Not in my opinion, no, sir.


Q. So you're saying it's impossible that he didn't hear and understand you?


A. I did not get that impression, is what I'm saying.


Q. Okay. But then again, it's possible?


A. It could be possible.


Q. I believe you testified that the next thing you did was position your car in front
of him?


A. Yes, I did.


Q. Did he stop when you pulled your car in front of him?


A. Not completely, no.


Q. What do you mean not completely?


A. He was very hesitant. I mean, he had -- he was fixing to run, is what he was
going to do.



 Appellant on cross-examination testified:



Q. What did he do next?


A. He jumped out of the car and grabbed me.


Q. Okay. Did he pull his car in front of you in such a way that you couldn't get
away?


A. No, sir.


Q. If you had wanted to run, could you have run anytime prior to when he
grabbed you?


A. Yes.


* * * * * *



Q. You stated that it was your impression that Officer Lara thought you were
going to run.


A. No. I said that I thought that he was under the impression that I was going to
run.


Q. Right. Why were you under that impression?


A. In how he got out of the car.


Q. Why do you think that he got out of -- in what way did he get out of the car?


A. Like he thought that I was going to run.



 We conclude that Officer Lara had probable cause to arrest appellant for the offense
of evading detention and that the cocaine seized was obtained in a search incident to his lawful
warrantless arrest.

 The trial court's order denying appellant's motion to suppress evidence is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Powers, Kidd and Dally*

Affirmed

Filed: January 11, 1995

Do Not Publish





* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1988).

1.   Now Tex. Penal Code Ann. § 38.04 (West 1994) which is substantially the same.