IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-244-CR





FRED RHEINLANDER,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE



 




FROM THE COUNTY COURT AT LAW NO. 3 OF TRAVIS COUNTY



NO. 373-447, HONORABLE DAVID CRAIN, JUDGE PRESIDING



 





 Appellant entered a no contest plea before the court and was convicted of the
offense of driving a motor vehicle in a public place while intoxicated. Tex. Rev. Civ. Stat. Ann.
art. 6701l-1 (West Supp. 1994). He preserved his right to appeal from the trial court's order
denying his motion to suppress evidence obtained in an alleged unlawful investigatory stop. We
will reverse.

 Appellant, in his sole point of error, asserts that the trial court erred in its denial
of his motion to suppress evidence. The trial court's order denying appellant's motion should not
be disturbed on appeal unless there is clear abuse of discretion shown. Davis v. State, 829
S.W.2d 218, 220 (Tex. Crim. App. 1992); Freeman v. State, 723 S.W.2d 727, 729 (Tex. Crim.
App. 1986); State v. Carr, 774 S.W.2d 379, 380 (Tex. App.--Austin 1989, no pet.).

 Donald Anthony Haywood, a City of Austin police officer with eleven years
experience, testified at the hearing of appellant's motion to suppress. His testimony is undisputed. 
On April 22, 1992, at about 11:30 p.m., Haywood was driving on an Interstate Highway 35
frontage road when he noticed a Lincoln Continental car ahead of him because its lights frequently
changed between high and low beam. The car weaved slightly, but stayed within its lane of
travel. It was being driven at between 30 and 35 miles an hour which Haywood thought was
unusually slow even though there was no minimum speed limit on the frontage road. Haywood
continued to follow the Lincoln Continental as it went from the frontage road to the entry ramp
and onto the Interstate Highway. There was scarcely any other traffic on the frontage road and
only light traffic on the Interstate where the maximum speed limit was 55 miles an hour. 
Although Haywood thought erroneously that the minimum speed limit was 45 miles an hour, there
is no specified minimum speed limit. As Haywood followed the car onto the Interstate, its lights
continued to frequently change between high and low beam, the car continued to weave slightly
within its own lane of traffic, and it was still being driven at between 30 and 35 miles an hour. 
Haywood noticed the driver kept his head close to the steering wheel, looked in the rear view
mirror, and seemed to be having "trouble with the dash" or trouble seeing. Haywood believed
the car was being driven so slowly that it might dangerously hinder traffic. After he had followed
the car for a total of one to one and one-fourth miles, Haywood decided to stop the car. After
Haywood stopped the car, he found the appellant was the driver and that there was ample probable
cause to arrest appellant for driving while intoxicated. Nothing in Haywood's testimony indicates
that he believed appellant had violated any law that would justify the initial stop of appellant. 
Haywood was asked: "Did you stop him because you thought he might be intoxicated, or did you
stop him because you thought he might be in violation of a traffic law?" Haywood replied, "I
stopped him because of the speed he was driving and also to find out if there was a problem with
his eyesight or his lights or some other mechanical reason in his car."

 Cases in this State hold that, before a person driving an automobile may be stopped
and lawfully detained by an officer, that officer must have specific articulable facts to reasonably
suspect that the person stopped is associated with criminal activity. For a stop to be lawful under
the reasonable suspicion standard, there must exist articulable facts used by the officer to create
some reasonable inference of criminal conduct. Viveros v. State, 828 S.W.2d 2, 4 (Tex. Crim.
App. 1992); Garza v. State, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989). A stop is justified
if the officer, based upon specific and articulable facts, reasonably surmises that the detained
person may be associated with a crime. Davis v. State, 829 S.W.2d 218, 219 (Tex. Crim. App.
1992) (citing Terry v. Ohio, 392 U.S. 1 (1968)).



Circumstances short of probable cause may justify temporary detention for the
purpose of investigation. Jackson v. State, 658 S.W.2d 623, 626 (Tex. Crim.
App. 1983). An investigatory stop is justified if a police officer, based upon
specific and articulable facts, reasonably concludes the detained person may be
associated with a crime. For a Terry stop to be valid, (1) the officer must have a
reasonable suspicion that some activity out of the ordinary is occurring; (2) there
must be some suggestion to connect the detained person with the unusual activity;
and (3) there must be some indication that the activity is related to a crime. 
Johnson, 658 S.W.2d at 626.



Jefferson v. State, 830 S.W.2d 320, 323 (Tex. App.--Austin 1992, pet. ref'd). 

 Although not yet recognized or adopted by the Court of Criminal Appeals, the
Supreme Court has recognized as an exception to the Terry stop a stop made by officers in their
"community caretaking function."

 We quote from Cady v. Dumbrowski, 413 U.S. 433, 441, as follows:



Because of the extensive regulation of motor vehicles and traffic, and also because
of the frequency with which a vehicle can become disabled or involved in an
accident on public highways, the extent of police-citizen contact involving
automobiles will be substantially greater than police-citizen contact in a home or
office. Some such contacts will occur because the officer may believe the operator
has violated a criminal statute, but many more will not be of that nature. Local
police officers, unlike federal officers, frequently investigate vehicle accidents in
which there is no claim of criminal liability and engage in what, for want of a
better term, may be described as community caretaking functions, totally divorced
from the detection, investigation, or acquisition of evidence relating to the violation
of a criminal statute.



 Based on the rationale of Cady v. Dumbrowski, a number of states have recently
recognized that in some cases officers exercising their "community caretaking function" are
justified in making investigatory stops in the absence of suspected criminal activity. State v.
Pinkham, 565 A.2d 318, 319 (Me. 1989). ("If we were to insist upon suspicion of activity
amounting to criminal or civil infraction to meet the [Terry v. Ohio, 392 U.S. 1 (1968)] standard,
we would be overlooking the police officer's legitimate role as a public servant to assist those in
distress and to maintain and foster public safety."); State v. Fuller, 556 A.2d 224 (Me. 1989)
(stop of car with its headlights blinking on and off four or five times within a quarter mile
upheld); State v. Harrison, 533 P.2d 1143, 1144 (Ariz. 1975) (stop made because tire was
"bouncing" held proper under police power); State v. Marcello, 599 A.2d 357, 358 (Vt. 1991). 
("In some circumstances, however, police officers without reasonable suspicion of criminal
activity are allowed to intrude on a person's privacy to carry out 'community caretaking' function
to enhance public safety.'") Similar cases are: Crauthers v. State, 727 P.2d 9, 11 (Alaska Ct.
App. 1986); State v. Martinez, 615 A.2d 279, 281 (N.J. Super. Ct. App. Div. 1992); In re
Clayton, 748 S.W.2d 401, 402 (Idaho 1988); Smith v. State, 785 S.W.2d 465, 466 (Ark. 1990);
State v. Vistuba, 840 P.2d 511, 514 (Kan. 1992); State v. Puig, 544 P.2d 201, 202 (Ariz. 1975).

 The State in its brief has cited McDonald v. State, 759 S.W.2d 784 (Tex. App.--Fort
Worth 1988, no pet.), which relied on Cady. The court of appeals in that case held that "when
a police officer has a demonstrable reason to believe that a particular individual may be unfit to
drive for medical or other reasons, a temporary stop is justified for the limited purpose of
investigating the person's well-being." That court of appeals further concluded: "We believe the
possible danger such a person presents to the public warrants such a stop before a traffic tragedy
occurs." Appellant has also recognized the McDonald opinion, and correctly points out: "This
position [taken in McDonald] has not been adopted by other Texas courts and it is seemingly at
odds with the reasonable suspicion of criminal activity standard adopted by this Court and the
Texas Court of Criminal Appeals." Although the opinions in Cady and McDonald make no
distinction between moving and non-moving vehicles, the automobiles in both cases were not
moving when officers detained their drivers.

 When the facts and circumstances of this case are measured by the existing case law
in this state which is binding on the trial court and on this Court, we must conclude that the
stopping of appellant was unlawful and that the trial court abused its discretion and erred in
overruling appellant's motion to suppress, and we so hold.

 The judgment of the trial court is reversed, and the cause is remanded to the trial
court.



 

 Carl E. F. Dally, Justice

Before Justices Aboussie, Jones and Dally*

Reversed and Remanded

Filed: December 7, 1994 

Publish 






























* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1988).